IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Case No. 5:18-cv-00258-BO

| | |
|---|---|
| ATLANTIC COAST PIPELINE, LLC, | |
| *Plaintiff*, | **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR ATTORNEYS' FEES AND COSTS** |
| v. | |
| 3.92 ACRES, MORE OR LESS, IN JOHNSTON COUNTY, NORTH CAROLINA *et al.*, | Local Civil Rule 7.1(f) |
| *Defendants*. | |

Plaintiff Atlantic Coast Pipeline, LLC ("Atlantic"), pursuant to Local Civil Rule 7.1(f) and by and through the undersigned counsel, respectfully submits this memorandum in opposition to the Motion for Attorneys' Fees and Costs filed by defendant Larry E. Cox ("Defendant") [Doc. 28].

**INTRODUCTION**

Federal condemnation law has always prohibited parties from recovering litigation expenses absent explicit Congressional authorization to the contrary. The default rule applies here, notwithstanding the Uniform Relocation and Real Property Acquisition Act, because Atlantic is not the "United States" within the plain meaning of that term and of the Act.

Despite the plain meaning of the term "United States," Defendant's motion assumes that private companies, such as Atlantic, are subsumed within the term's meaning. But Defendant provides no citation for this, and courts have squarely held that the term "United States" does not include private companies acting under the authority of the Natural Gas Act.

Furthermore, North Carolina's state condemnation procedures do not apply to this federal condemnation brought under the Natural Gas Act. And even if state law had some role to play, the North Carolina fee-shifting statute does not apply because it is a procedural rule superseded by Fed. R. Civ. P. 71.1 and inapplicable in the federal courts.

Finally, it is not clear that Defendant is actually liable for the fees incurred, and his request should be denied for this additional reason. For these reasons, as more fully discussed below, the Court should deny Defendant's motion.

## RELEVANT BACKGROUND

Atlantic is a private company whose purpose was to construct a 600-mile interstate natural gas pipeline across West Virginia, Virginia, and North Carolina. Defendant's property lay in the path of the pipeline. Thus, in August 2018, Atlantic initiated this proceeding to condemn a permanent easement of 1.59 acres and a temporary easement of 2.33 acres on Defendant's property. Atlantic has never invoked a right to condemn arising from North Carolina law. Rather, Atlantic has relied exclusively on the Natural Gas Act ("NGA"), 15 U.S.C. § 717f(h), and the procedures set forth in Fed. R. Civ. P. 71.1.

On July 5, 2020, Atlantic announced the cancelation of its pipeline project and accordingly, Atlantic voluntarily dismissed this action without prejudice on August 17, 2020, pursuant to Fed. R. Civ. P. 71.1(i)(1)(A). [Doc. 27.] Defendant filed his motion for attorneys' fees and costs on September 14, 2020, arguing that he is entitled to fees under the Uniform Relocation Assistance and Real Property Acquisitions Policies Act ("URA" or the "Act"), 42 U.S.C. § 4601, *et seq.*, or the North Carolina state condemnation procedures, N.C. Gen. Stat. § 40A-1, *et seq.* The motion included no evidence from Defendant, who is the only individual potentially entitled to fees under

2

either statute.  Instead, the attachments to the motion include only an affidavit and billing entries from Defendant's attorney and an invoice from an appraiser.

## ARGUMENT

**I.      Atlantic Is Not the "United States" Within the Meaning of the URA.**

Generally speaking, each party to civil litigation in federal court pays its own attorneys' fees.  As explained by the Supreme Court, "[o]ur basic point of reference when considering the award of attorney's fees is the bedrock principle known as the American Rule: Each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Baker Botts LLP v. ASARCO LLC*, 576 U.S. 121, 126 (2015) (internal quotation marks omitted).  In order to recover attorneys' fees and costs here, Defendant must establish a statute or contract which "provides otherwise."

In the instant motion, Defendant argues broadly that he is entitled to fees under the URA. [Doc. 28 at 4.]  Defendant's claim under the URA could only be based on an argument that this proceeding has been "abandoned by the United States."  Relevant here, the URA provides as follows:

> The Federal court having jurisdiction of a proceeding instituted by a Federal agency to acquire real property by condemnation shall award the owner of any right, or title to, or interest in, such real property such sum as will in the opinion of the court reimburse such owner for his reasonable costs, disbursements, and expenses, including reasonable attorney, appraisal, and engineering fees, actually incurred because of the condemnation proceedings, if--
>
> > (1)      the final judgment is that the Federal agency cannot acquire the real property by condemnation; or
>
> > (2)      the proceeding is abandoned by the United States.

42 U.S.C. § 4654(a).  Defendant does not and cannot argue that subsection (1) applies, because there is no "final judgment" prohibiting Atlantic from acquiring the easements.

3

To the extent Defendant argues that Atlantic falls within the meaning of "United States" in subsection (2), this argument must fail because Atlantic is not the "United States" as that term is used in the statute.

### A. The plain and ordinary meaning of "United States" does not include private companies like Atlantic.

Quite clearly the plain and ordinary meaning of "United States" does not include private companies like Atlantic. The URA's "Definitions" section, 42 U.S.C. § 4601, does not define "United States." "Absent explicit legislative intent to the contrary, we give the words of a statute their plain and ordinary meaning." *Broughman v. Carver*, 624 F.3d 670, 675 (4th Cir. 2010) (internal quotation marks omitted). "The Court customarily turns to dictionaries for help in determining whether a word in a statute has a plain or common meaning." *Johnson v. Zimmer*, 686 F.3d 224, 232 (4th Cir. 2012) (internal quotation marks and brackets omitted).

Black's Law Dictionary – whose entry for "United States" refers readers to "United States of America" – defines the term as: "A federal republic formed after the late-18th-century War of Independence and made up of 48 coterminous states, plus the state of Alaska and the District of Columbia in North America, plus the state of Hawaii in the Pacific." *United States of America*, BLACK'S LAW DICTIONARY (11th ed. 2019). Other dictionaries provide substantively identical definitions. *E.g.*, *United States of America*, MERRIAMWEBSTER.COM (defining as "a country (a federal republic) in North America bordering on the Atlantic, Pacific, and Arctic oceans; capital Washington area 3,796,742 square miles (9,833,517 square kilometers), population 329,256,000" and specifically noting that the definition does not include individuals, who are instead "usually referred to as an American"); THE RANDOM HOUSE DICTIONARY (2d ed. 1987) ("[A] republic in the N Western Hemisphere comprising 48 coterminous states, the District of Columbia, and Alaska

4

in North America, and Hawaii in the N Pacific"). These definitions do not include private companies.

> **B.** **Congressional intent suggests that "United States" does not include private companies.**

These dictionary definitions are consistent with Congress's use of the term "United States" in other parts of the URA and the Code. For instance, the URA defines "State" to mean each of the components of the "United States," which does not include any private companies. *See* 42 U.S.C. § 4601(2). Similarly, in other sections of the Code, Congress defined "United States" to mean an aggregation of political subdivisions without any reference to private companies. *See, e.g.*, 16 U.S.C. § 951 ("The term 'United States' includes all areas under the sovereignty of the United States."); 49 U.S.C. § 15102(6) ("The term 'United States' means the States of the United States and the District of Columbia."); 50 U.S.C. § 4801(12) ("The term 'United States' means the several States, the District of Columbia, the Commonwealth of Puerto Rico, the Commonwealth of Northern Mariana Islands, American Samoa, Guam, the United States Virgin Islands, and any other territory or possession of the United States."). Without *any* legislative intent – let alone *explicit* legislative intent – to include private companies within the URA's definition of "United States," the Court must apply the term's plain and ordinary meaning. *Hillman v. I.R.S.*, 250 F.3d 228, 233 (4th Cir. 2001) (explaining that absent "clearly expressed congressional intent," the "court's analysis must end with the statute's plain language").

The context of the statute as a whole also undercuts Defendant's interpretation. Although Congress has specifically defined the term "Federal agency" to include private companies like Atlantic when condemning pursuant to federal law, *see* 42 U.S.C. §4601(1); *see also Transwestern Pipeline Co. v. 17.19 Acres*, 627 F.3d 1268, 1271 (9th Cir. 2010) (explaining that Congress "changed the definition of 'Federal agency' to include private persons" in 1987), Congress only

used this more expansive term in the first of the URA's two fee-shifting provisions for condemnations. *See* 42 U.S.C. § 4654(a)(1).

By contrast, in the second fee-shifting provision – the provision relevant here – Congress chose to use the term "United States," rather than "Federal agency." *See* 42 U.S.C. § 4654(a)(2). Defendant's briefing does not address this distinction, simply arguing that Atlantic is a Federal agency within the meaning of the law. Defendant's argument is insufficient to show that he is entitled to fees, however. "Where Congress has utilized distinct terms within the same statute, the applicable canons of statutory construction require that we endeavor to give different meanings to those different terms . . . ." *Soliman v. Gonzales*, 419 F.3d 276, 283 (4th Cir. 2005). Given this well-settled principle, the Court should decline to broaden § 4654(a)(2) by reading "United States" to also include "Federal agencies." Such an interpretation would contradict Congress's intent. Thus, the Court should instead adopt the plain and ordinary meaning of "United States," which does not include private companies.[1]

## C. Judicial interpretations of the URA, and the term "United States" in particular, support the common-sense construction.

Defendant does not cite any case law in support of his argument that the URA should apply, instead apparently relying on only the plain language of the statute. [Doc. 28 at 4.] For all the reasons stated above, the plain language of the statute does not support Defendant's argument. Further, judicial interpretations of the statute contradict Defendant's argument. Courts apply a narrow construction to the URA to avoid swallowing the otherwise applicable rule against fee-

---

[1] The URA's legislative history confirms this understanding. When the URA was enacted in 1970, private condemnors like Atlantic were not included in the definition of "Federal agency" and thus were not contemplated by the statute at all. When Congress amended the statute to include private condemnors, it only added them to the definition of "Federal agency." *See* Surface Transportation and Uniform Relocation Assistance Act of 1987, P.L. 100-17, Section 401. Congress did not add private condemnors to the definition of "United States." Thus, there is no indication that Congress intended § 4654(a)(2) to apply to private condemnors like Atlantic.

6

shifting in federal condemnations. *See, e.g.*, *United States v. 410.69 Acres*, 608 F.2d 1073, 1076 (5th Cir. 1979) ("Clearly Congress intended to create only a narrow exception to the general rule of nonrecovery for litigation expenses in condemnation cases when it enacted § 304(a)."); *United States v. 4.18 Acres*, 542 F.2d 786, 788-89 (9th Cir. 1976) ("[S]ection 304 is not to be construed broadly. . . . It seems fair to conclude that Congress intended by section 304(a) to create a narrow exception to the general rule of nonrecovery of litigation expenses. Recovery of litigation expenses in the present case could be justified only by a most expansive reading of the statute."). Under this narrow reading, "United States" cannot include private companies, as Defendant suggests.

Importantly, moreover, courts have applied this straightforward interpretation to hold that "United States," as used in § 4654(a)(2), does not include private companies. *See Transwestern Pipeline Co. v. 17.19 Acres*, 627 F.3d 1268, 1271 (9th Cir. 2010) ("[W]e adhere to the plain meaning of the term 'United States' in § 4654(a)(2), and that term does not include private entities . . . ."), *aff'g Transwestern Pipeline Co. v. 17.19 Acres*, No. 2:08CV33, 2009 WL 10695208 (D. Ariz. July 17, 2009) (concluding that "United States" does not include private condemnors). In *Transwestern*, the Ninth Circuit looked to the plain and ordinary meaning of the term, including dictionary definitions, and contrasted Congress's use of "United States" with its use of "Federal agency" in other areas of the statute. *See id.* at 1270-71. Based on this analysis, the court concluded as follows:

> The Act does not define the term "United States" and does not indicate that we are to read the special definition of "Federal agency" from § 4601(1) into the term "United States." Accordingly, we decline to do so, and adhere instead to the common understanding of the term "United States." Given our interpretation of the term, the landowner's right to costs and fees is triggered only when the federal government abandons a condemnation proceeding, not when a private entity such as Transwestern does so, even if that private entity is exercising federally granted condemnation power.

7

*Id.* The Ninth Circuit's decision is directly on point, and no other circuit court has held otherwise. The *Transwestern* court's well-reasoned interpretation should be considered persuasive here.

## II.  Defendant Has Not Carried His Burden of Demonstrating That He "Actually Incurred" the Fees and Costs He Seeks to Recover.

Even if the term "United States" were applicable to Atlantic – which it is not – Defendant still has not established his entitlement to the fees and costs he seeks to recover.  Although Defendant's counsel attaches an affidavit stating his "normal hourly rate" is $300 and that he has spent 11.75 hours on the matter, neither the affidavit nor Defendant's motion states that Defendant will be liable for these alleged fees.  Put another way, it is possible that Defendant's counsel was working on a contingency agreement, under which he would only be entitled to fees if he achieved a successful outcome for Defendant.  Defendant has therefore failed at the outset to carry his burden of proving that he "actually incurred" the amounts sought.[2]  *See Fox v. Vice*, 563 U.S. 826, 838 (2011) ("The fee applicant (whether a plaintiff or a defendant) must, of course, submit appropriate documentation to meet the burden of establishing entitlement to an award.").

Defendant does not cite any case granting an award of attorney's fees to a party who was not obligated to pay such fees and the Court should decline to award fees.  Fee-shifting statutes are to be construed narrowly because they are in derogation of the common law American Rule that parties bear their own attorneys' fees.  *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533-34 (1994). The plain language of the reimbursement provisions of 42 U.S.C. § 4654(a) and N.C. Gen. Stat. § 40A-8(b) bars a fee applicant from recovering fees and costs that the applicant did not incur. Significantly, 42 U.S.C. § 4654(a) focuses on the "owner" and reimbursing "*such owner* for his

---

[2] Like the URA, N.C. Gen. Stat. § 40A-8(b) entitles landowners only to "reimbursement" for expenses actually incurred.  *See also City of Charlotte v. McNeely*, 190 S.E.2d 179, 185 (N.C. 1972) (holding that landowners are entitled only to "actual costs reasonably incurred," and that "such reimbursement is the limit of their entitlement").

reasonable costs, disbursements, and expenses … *actually incurred* because of the condemnation proceedings." 42 U.S.C. § 4654(a) (emphasis added).  In like fashion, N.C. Gen. Stat. § 40A-8(b) focuses on the "owner" and "reimburs[ing] the owner for[] his reasonable [fees and costs]."  Both statutes' focus on the "owner" – as opposed to the attorney – comports with the rule of law that requires a fee applicant to have "a legal and contractual obligation to pay [the fees and cost sought to be recovered]."  *See Emory Coll. v. Accrediting Council for Continuing Educ. & Training, Inc.*, Civil Action 97-1416-A, 1998 U.S. Dist. LEXIS 22207, at *4 (E.D. Va. Jan. 22, 1998); *United States v. 243.538 Acres of Land*, 509 F. Supp. 981, 986 (D. Haw. 1981) (holding with respect to a fee petition in a federal condemnation case that "the claimant must be under some legal obligation to pay an attorney for services rendered").

Defendant does not even allege, much less provide evidence, that he is obligated to pay his counsel's fees.  Thus, Defendant is not entitled to any recovery under either 42 U.S.C. § 4654(a) or N.C. Gen. Stat. § 40A-8(b).

**III.  North Carolina State Condemnation Procedures Do Not Apply to Federal Condemnation Proceedings Brought Under the NGA and Fed. R. Civ. P. 71.1.**

As an alternative to a fee award under the URA, Defendant seeks fees and costs under North Carolina's state condemnation procedures.  [Doc. 28 at 4.]  This claim fails, however, because state law cannot displace longstanding federal common law on this issue, which prohibits the recovery of litigation expenses in condemnation actions.  Additionally, the North Carolina fee-shifting statute applies only to condemnations brought under those same state procedures.  Because Atlantic brought this proceeding exclusively under the NGA and Fed. R. Civ. P. 71.1, the North Carolina statute does not apply.

9

**A.      In federal actions arising solely from federal substantive law and procedure, the longstanding "American Rule" trumps any state fee-shifting statute.**

There is no support for the application of North Carolina law to measure fees in this case. "Our basic point of reference when considering the award of attorney's fees is the bedrock principle known as the American Rule: Each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Baker Botts LLP v. ASARCO LLC*, 576 U.S. 121, 126 (2015) (internal quotation marks omitted); *see also Ehrenhaus v. Baker*, 717 S.E.2d 9, 32 (N.C. App. 2011) ("North Carolina follows the American Rule with regard to award of attorney's fees."). The American Rule is as much the analytical starting point in a condemnation action as it is in any other action involving a fee applicant. *See, e.g.*, *Bywaters v. United States*, 670 F.3d 1221, 1226 (Fed. Cir. 2012). Indeed, no statute is "exempt from the presumption against fee shifting." *Peter v. Nantkwest, Inc.*, __ U.S. __, __, 140 S. Ct. 365, 371 (2019).

Because the American Rule is so firmly embedded in the federal common law, only Congress can abrogate it. *See Key Tronic Corp. v. United States*, 511 U.S. 809, 815 (1994) ("Recognition of the availability of attorney's fees therefore requires a determination that *Congress* intended to set aside this longstanding American rule of law.") (internal quotation marks omitted) (emphasis added); *In re Crescent City Estates, LLC*, 588 F.3d 822, 826 (4th Cir. 2009) ("Absent explicit authorization from *Congress*, it is our duty to keep the American Rule intact.") (emphasis added). By contrast, any fee-shifting statutes enacted by state legislatures necessarily conflict with federal law. *See, e.g.*, *Camacho v. Texas Workforce Comm'n*, 445 F.3d 407, 412 (5th Cir. 2006) (holding that a Texas fee-shifting statute "does conflict with a federal policy: the 'American Rule'").

Because of this conflict, the American Rule must prevail in federal actions involving exclusively federal questions and federal procedures. Atlantic brought this case under the NGA

10

and Fed. R. Civ. P. 71.1, as well as the Court's federal question jurisdiction. [Doc. 1, ¶ 2.] The North Carolina fee-shifting statute, therefore, "does not apply for the very fundamental reason that no substantive provision of [North Carolina] law was ever pled, much less was any violation of any underlying [North Carolina] cause of action ever found." *Chin v. Chrysler LLC*, 538 F.3d 272, 277 (3d Cir. 2008). In the words of the Third Circuit, "this should have been game, set, and match." *Id.*

The District of Kansas employed this same rationale when it rejected an argument that state law on attorneys' fees should apply in that condemnation case. As that court explained: "Defendants' reliance on state law is unavailing in a proceeding governed by federal law and procedures. Perhaps the state statutes they cite authorize attorneys' fees in similar actions under state law, but they have no application in this action under the NGA." *N. Natural Gas Co. v. Approximately 9117 Acres*, 114 F. Supp. 3d 1144, 1171 (D. Kan. 2015) (citing *Irick v. Columbia Gas Transmission Corp.*, No. 5:07CV95, 2008 WL 191324, *3 (W.D. Va. 2008)), *aff'd in part and rev'd in part on other grounds sub nom N. Natural Gas Co. v. L.D. Drilling*, 862 F.3d 1221 (10th Cir. 2017). The Court should adopt the same rationale and conclusion here.

**B.      The *Kimbell* test does not apply here because federal common law already supplies the rule of decision on the issue of fees.**

Defendant relies upon *Tennessee Gas Pipeline Co. v. Permanent Easement for 7.053 Acres*, 931 F.3d 237 (3d Cir. 2019) to argue that "State law has been used in measuring just compensation in Federal cases when Federal law does not provide adequate remedies for compensation and reimbursement to Landowners." [Doc. 28 at 4.] But *Tennessee Gas Pipeline* is inapposite because it was based on the premise that federal common law simply did not supply any rule of decision for measuring *just compensation*, thus requiring the courts to either fashion a new nationwide rule or adopt existing state law on the subject. On the issue of fees, by contrast, Congress has already

11

addressed the appropriate manner of determining fees, *see supra*, and therefore federal common law does not apply. *See Native Vill. of Kivalina v. ExxonMobil Corp.*, 696 F.3d 849, 856 (9th Cir. 2012) ("If Congress has addressed a federal issue by statute, then there is no gap for federal common law to fill.").

C. **North Carolina's procedural fee-shifting statute is superseded by Fed. R. Civ. P. 71.1.**

Finally, Chapter 40A of the North Carolina Code amounts to a series of procedures displaced by Fed. R. Civ. P. 71.1. The language of the statute cedes this point: "the *procedures* provided by this Chapter shall be the exclusive condemnation *procedures* to be used in this State . . . ." N.C. Gen. Stat. 40A-1(b) (emphasis added). Under North Carolina law, moreover, "attorney's fees and costs are collateral to a final judgment on the merits" and are "not part of the substantive claims." *Duncan v. Duncan*, 742 S.E.2d 799, 800-01 (N.C. 2013); *see also Dep't of Transp. v. Prince*, 640 S.E.2d 447, *3 (N.C. App. 2007) ("Attorney fees and other costs of litigation are not included in the just compensation owed as a constitutional right to a condemnee."). This state procedure requirement has been superseded by Rule 71.1. *Mountain Valley Pipeline, LLC v. Easements to Construct*, No. 7:17CV492, 2020 WL 2840165, at *2 (W.D. Va. June 1, 2020) (internal quotation marks and brackets omitted); *see also Columbia Gas Transmission, LLC v. 76 Acres*, 701 F. App'x 221, 226 (4th Cir. 2017) ("Rule 71.1 of the Federal Rules of Civil Procedure governs condemnation actions."). Thus, North Carolina's procedural fee-shifting statute, N.C. Gen. Stat. 40A-8(b), does not apply.

## CONCLUSION

There is no statutory authorization to award attorneys' fees or costs to Defendant in this case. Atlantic is not "the United States" and therefore the URA's fee-shifting provision does not

12

apply, and North Carolina state law is simply not applicable in this case filed in federal court by

condemnor under federal law.  For these reasons, the Court should deny Defendant's motion.

This the 28th day of September, 2020.

/s/ Henry L. Kitchin, Jr.
Henry L. Kitchin, Jr.
N.C. State Bar No. 23226
MCGUIREWOODS LLP
Post Office Box 599 (28402)
Wilmington, North Carolina 28401
Telephone:   (910) 254-3800
Facsimile:    (910) 254-3900
Email:          hkitchin@mcguirewoods.com

Dhamian A. Blue
N.C. State Bar No. 31405
Blue LLP
205 Fayetteville Street
Raleigh, North Carolina 27601
Telephone:   (919) 833-1931
Facsimile:    (919) 833-8009
Email:          dab@bluellp.com

*Of Counsel:*

John D. Wilburn
Email:          jwilburn@mcguirewoods.com
Richard D. Holzheimer, Jr.
Email:  rholzheimer@mcguirewoods.com
McGuireWoods LLP
1750 Tysons Boulevard, Suite 1800
Tysons, Virginia 22102
Telephone:    (703) 712-5000
Facsimile:     (703) 712-5050

*Counsel for Atlantic Coast Pipeline, LLC*

13

CERTIFICATE OF SERVICE

I, Henry L. Kitchin, Jr., of McGuireWoods LLP, certify:

That I am, and at all times hereinafter mentioned was, more than eighteen (18) years of age;

That on this day, copies of the foregoing will be served on the following by the Court's Case Management / Electronic Case Filing ("CM/ECF") system:

Philip G. Kirk
Kirk Kirk Howell Cutler & Thomas, LLP
P. O. Box 729
Wendell, NC 27591
*Counsel for Defendant*

I certify under penalty of perjury that the foregoing is true and correct.

This the 28th day of September, 2020.

/s/ Henry L. Kitchin, Jr.
Henry L. Kitchin, Jr.
*Counsel for Atlantic Coast Pipeline, LLC*